IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BISHOP DIEHL, LTD (f/d/b/a BISHOP, DIEHL & LEE, LTD), an Illinois corporation<br><br>    Plaintiff,<br><br>v.<br><br>NICHOLAS LEE and ZHANG HENG (a/k/a HENRY RICH or WEISITE),<br><br>    Defendants. | Case No. 1:25-cv-05395<br><br>Honorable John F. Kness<br><br>Magistrate Judge Heather K. McShain |

## DEFENDANT ZHANG HENG'S OPPOSED MOTION TO STAY PROCEEDINGS

Defendant Zhang Heng ("Defendant Heng" or "Heng") moves the Court for an order staying this action pending resolution of arbitration between Plaintiff Bishop Diehl, Ltd ("Plaintiff" or "Bishop Diehl") and Defendant Nicholas Lee ("Defendant Lee" or Lee). Bishop Diehl's claims against Heng are so closely related to Bishop Diehl's claims against Lee that arbitration of those claims is likely to resolve the issues involving Bishop Diehl and Heng. Proceeding with Bishop Diehl's claims against Heng while Bishop Diehl's claims against Lee are before the arbitrator would waste judicial resources, would risk inconsistent verdicts, and ultimately, might prejudice one or more parties. For these reasons, and as further discussed below, Defendant Heng requests the Court grant Heng's motion to stay proceedings pending resolution of arbitration between Plaintiff and Defendant Lee.

### BACKGROUND

On May 15, 2025, Bishop Diehl filed its Complaint against Lee arising out of his employment with and departure from Bishop Diehl. (Compl. ¶ 1, ECF No. 1.) On June 10, 2025,

1

Lee filed a Motion to Compel Arbitration pursuant to the mandatory arbitration provision in the parties' agreement. (ECF No. 15.) On July 1, 2025, Plaintiff filed its First Amended Complaint ("FAC"), adding Defendant Heng. (ECF No. 19.) Specifically, the FAC brings claims for: (i) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); (ii) breach of the Stockholder Agreement; (iii) breach of fiduciary duty; (iv) aiding and abetting breach of fiduciary duty; (v) tortious interference with prospective economic benefit; (vi) conversion; (vii) constructive fraud; (viii) unjust enrichment; (ix) violation of 18 U.S.C. § 1962(c) and § 1964(c); (x) civil conspiracy; and (xi) unjust enrichment. (*Id.* ¶¶ 75–165.) Counts I, IX, and X were brought against both Defendants. (*Id.* ¶¶ 75–87, 147–61.) Counts II–III, V–VIII were brought against Lee (*Id.* ¶¶ 88–110, 116–46.); Counts IV and XI were brought against Heng. (*Id.* ¶¶ 111–15, 162–65.) Plaintiff and Lee agreed to arbitrate all the claims against Lee in accordance with the arbitration provision in the parties' agreement. (Order ¶ 4, ECF No. 27.) All claims against Lee under the FAC were stayed under Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C.§ 3. (*Id.* ¶¶ 4–5.) All claims against Heng continued in litigation and were not subject to the stay. (*Id.* ¶ 6.) On September 19, 2025, Plaintiff filed a Motion for Entry of Preliminary Injunction to enjoin Heng from engaging in use of Bishop Diehl's letterhead and signature block; Heng agreed to this motion. (Mot. for Entry of Prelim. Inj., ECF No. 50.) The Court entered this preliminary injunction against Heng on October 8, 2025. (Agreed Prelim. Inj., ECF No. 56.)

Bishop Diehl's Lanham Act claim is based on allegations that Heng used Bishop Diehl's letterhead and signature block without Bishop Diehl's knowledge or consent in conjunction with alleged unauthorized legal work. (*Id.* ¶¶ 75–87.) Bishop Diehl's remaining claims against Heng, all of which relate to Lee's legal work for clients Heng referred and served as an authorized agent for clients from China to Bishop Diehl while Lee was employed by Bishop Diehl, allege that Heng,

2

among other things: (i) substantially assisted Lee in violating his fiduciary duties to Bishop Diehl by instructing clients to make payments directly to Lee for legal services rendered; (ii) operated an enterprise with Lee with the shared purpose of misappropriating Bishop Diehl's clients, revenues, and intellectual property for their own personal gain; (iii) conspired with Lee to divert Bishop Diehl's revenue, resources, and client goodwill to themselves personally and to third parties; and (iv) unjustly enriched himself by receiving payments and other benefits derived from work performed by Bishop Diehl without compensating the firm. (*Id.* ¶¶ 111–15, 147–65.) Each of these allegations against Heng arise out of or are connected to Lee's legal work and contractual relationship with Bishop Diehl, all of which is covered by the Stockholders Agreement.

## LEGAL STANDARDS

"[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007). However, "[a]n exception to this rule has been recognized when staying arbitrable issues, while allowing nonarbitrable issues to proceed in the district court, risks inconsistent rulings because the pending arbitration is likely to resolve issues material to the lawsuit." *Id.* at 972 (alteration in original) (citation omitted). Put another way, staying the entire litigation is appropriate when "piecemeal litigation—litigating one issue in court while another issue is resolved by arbitration"—"would decide an arbitrable issue and thereby impair the issues before the arbitrator." *WMS Gaming, Inc. v. IGT*, 31 F. Supp. 3d 974, 978 (N.D. Ill. 2014) (citations omitted). In deciding whether to stay the litigation of non-arbitrable issues, the Court considers: (1) "the risk of inconsistent rulings," (2) "the strain on judicial resources," (3) "the prejudice caused by delay," and (4) "the extent to which the parties will be bound by the arbitration." *Id.* at 977. "In many instances, moreover, district courts actually may prefer to stay

3

the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court." *Volkswagen*, 474 F.3d at 972.

## ARGUMENT

**I. The Court should stay all claims against Heng.**

**A. Bishop Diehl's claims against Heng are sufficiently interrelated with Bishop Diehl's claims against Lee.**

The FAC alleges that Heng and Lee acted as co-conspirators in a unified scheme to defraud Bishop Diehl through misappropriation of client fees, misuse of Bishop Diehl's branding and intellectual property, and unauthorized solicitation of Bishop Diehl's clients. (First Am. Compl. ¶¶ 147–61.) Heng's purported role as a "co-conspirator" arises out of or in connection to Lee's conduct and role as an equity partner while employed at Bishop Diehl: (1) directing Bishop Diehl clients to make payments to Lee's personal bank account, per Lee's instructions (*id*. ¶¶ 19, 22–32.); (2) arranging for Lee to perform legal services for clients Heng referred at a discounted rate (*id*. ¶ 24.); (3) distributing legal opinion letters prepared by Lee that were falsely attributed to Bishop Diehl (*id*. ¶ 23.); and (4) misrepresenting himself as being associated with Bishop Diehl (*id*. ¶¶ 43–44.). Each of Heng's alleged actions directly implicates Lee's purported conduct, knowledge, use of Bishop Diehl assets, breach of his fiduciary duties, and his breach of the Stockholders Agreement. In sum, all of Bishop Diehl's claims against Heng arise directly from Lee's legal work and contractual relationship with Bishop Diehl, which is governed by the Stockholders Agreement.

**B. Arbitration of Bishop Diehl's claims against Lee is likely to resolve or substantially influence issues material to Heng's liability.**

Similarly, Bishop Diehl's claims against Heng are dependent upon the resolution of Bishop Diehl's claims against Lee. Count I (false designation of origin under the Lanham Act) rests entirely on Lee's status as "an equity partner at the Firm, contractually obligated to conduct all legal activity on behalf of the Firm." (*Id.* ¶ 77.) Accordingly, Heng's purported liability for this claim depends on whether Lee's use of Bishop Diehl's name, identity, and professional branding was unauthorized and whether Heng participated in that unauthorized use. The scope of Lee's authority—and therefore, whether his conduct was unauthorized—directly arises from and in connection to his contractual obligations under the Stockholders Agreement, which will be arbitrated. Moreover, Heng is enjoined from using Bishop Diehl's letterhead and signature block. (*See* Agreed Prelim. Inj. ¶ 1.)

Count IV (aiding and abetting breach of fiduciary duty) requires that Bishop Diehl establish the following elements: (a) Lee owed fiduciary duties; (b) Lee breached those duties; and (c) Heng substantially assisted that breach with knowledge of the fiduciary relationship. Heng cannot be found to have aided and abetted Lee's breach of fiduciary duty if Lee is not found to have owed fiduciary duties to Bishop Diehl. Therefore, resolution of Lee's purported breach of his fiduciary duties to Bishop Diehl in arbitration is a logical predicate to adjudication of Heng's derivative liability.

Count IX (violation of 18 U.S.C. § 1962(c) and § 1964(c)) alleges that Lee and Heng "were associated in fact and operated as an enterprise" and "engaged in a pattern of racketeering activity." (*Id.* ¶ 149.) The purported predicate acts primarily relate to Lee's transmission of a fraudulent invoice, Lee's direction of payments that should have gone to Bishop Diehl into his personal bank account, and Lee's use of Bishop Diehl's computer and network server to send emails directing

Heng and firm clients to make payments into Lee's personal bank account. (*Id.* ¶ 151.) There must be more than one individual involved to establish an enterprise for purposes of violating 18 U.S.C. § 1962(c). *See* 18 U.S.C. § 1961(4) (defining "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity"). Heng cannot be found to have associated with Lee and have operated as an enterprise if Lee is not found to have associated with Heng and have operated as an enterprise. Without definitive resolution of Lee's culpability, Heng's status as having operated as an enterprise—and therefore, his liability for participating in the purported predicate acts—cannot be determined.

Count X (civil conspiracy) similarly alleges that Lee and Heng "acting in concert with each other," conspired to divert Bishop Diehl revenue, resources, and client goodwill to themselves personally. (First Am. Compl. ¶ 158.) To succeed on a claim for civil conspiracy, Bishop Diehl must establish: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp, Inc*., 477 F.3d 502, 509 (7th Cir. 2007) (citation omitted). Like Count IX, Heng cannot be found to have acted in concert with Lee "for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means" if Lee is not found to have acted in concert with Heng for that same purpose. *Id.* Without definitive resolution of Lee's culpability, Heng's status as a co-conspirator—and therefore, his liability for participating in the purported overt acts—cannot be determined.

Count XI (unjust enrichment) alleges that Heng "received substantial payments and other benefits from legal work performed by the Firm, its attorneys, and its staff," namely from Lee's

6

legal services performed while he was employed by Bishop Diehl. (First Am. Compl. ¶ 163.) Determining whether Heng was unjustly enriched from Lee's services performed while employed by Bishop Diehl requires resolution of a predicate issue: whether Lee unjustly retained a benefit to Bishop Diehl's detriment by seeking and accepting payments to his personal bank account for legal services from particular clients. This claim arises directly from Lee's contractual relationship with Bishop Diehl, which will be arbitrated.

### C. Piecemeal litigation creates substantial risk of inconsistent verdicts, a strain on judicial resources, and prejudice to the parties.

#### i. Piecemeal litigation creates substantial risk of inconsistent verdicts.

As discussed above, arbitration will resolve issues instrumental to determining Heng's liability. Both arbitration and federal litigation will examine the identical conduct: Did Lee direct client payments to his personal account? Did Lee use Bishop Diehl's name, identity, and professional brand without authorization? Did Lee and Heng intend to create a revenue-sharing scheme? Absent a stay of Bishop Diehl's claims against Heng, this Court faces the prospect of applying different evidentiary standards, reaching different conclusions about the same facts, and issuing inconsistent determinations about Lee's intent, knowledge, authority, and breach—conclusions that logically underpin Heng's liability.

#### ii. Piecemeal litigation creates a strain on judicial resources.

Parallel arbitration and court proceedings will require duplicative discovery of the same documents, depositions and testimony from the same witnesses, trial preparation and presentation of substantially identical evidence, and additionally, resolution of duplicative discovery disputes and evidentiary issues by the Court. The Court's resources are finite. Plaintiff's claims involve detailed factual allegations spanning nearly 200 paragraphs and eleven separate counts. Bifurcating the proceeding forces this Court to manage a complex case while an arbitrator

simultaneously addresses overlapping liability questions. The Seventh Circuit has recognized that avoiding such wasteful duplication is a legitimate use of a court's authority to stay proceedings. *See, e.g.*, *Volkswagen*, 474 F.3d at 973.

### iii. Piecemeal litigation creates prejudice to the parties.

If federal litigation proceeds first and results in a judgment against Heng, arbitration may proceed as moot or serve only to apportion liability retroactively. Heng would be estopped by federal judgment even if arbitration might produce findings favorable to him regarding Lee's culpability. Alternatively, permitting Bishop Diehl to litigate related claims against Heng in parallel would effectively circumvent the Stockholders Agreement by obtaining in federal court what it cannot obtain in arbitration—a binding determination of underlying facts and liability that arbitration should resolve first. Moreover, allowing federal litigation to proceed creates incentive for Plaintiff to conduct duplicative discovery and expert work, multiplying Heng's litigation costs.

## CONCLUSION

For the reasons provided above, Defendant Zhang Heng respectfully requests that the Court stay Bishop Diehl's claims against Heng pending resolution of arbitration between Bishop Diehl and Defendant Nicholas Lee.

Dated: December 15, 2025                                       Respectfully submitted,

*/s/Anthony J. Biller*
Anthony J. Biller*
Sophia M. Vouvalis*
Envisage Law
P.O. Box 30099
Raleigh, North Carolina 27622
Phone: (919) 268-8998
Facsimile: (984) 212-5164
ajbiller@envisage.law
svouvalis@envisage.law
*Attorneys for Defendant Zhang Heng*
**pro hac vice* application pending*

/s/ *Ramses Jalalpour*
Ramses Jalalpour
Johnson & Bell, Ltd.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
Phone: (312) 372-0770
Facsimile: (312) 372-9818
jalalpourr@jbltd.com

*Local Counsel*